Good morning, Your Honors. May it please the Court, Kevin Keeney appearing on behalf of Valeda Neal. The District Court erred when it stated one of the reasons for failing to engage in the interactive process was the plaintiff's failure to undergo an IME by a doctor of her choice to dispute Dr. Karr's conclusions. That was a... I was confused about something. I read what Dr. Karr said, and it looked like he was fine for Neal. I mean, he said, well, it's not going to make her back any worse than it is, but it's going to hurt if she works overtime. He said she'll just have more pain, as I recall. I don't understand why the plaintiff objects or why the defendant rejects its own doctor. I'm kind of confused about the whole thing, because the defense doctor was so good for the plaintiff. What's going on? Well, what's going on, Your Honor, is that for 12 years, the employer, Kraft, accommodated the plaintiff, Ms. Neal. Right. Got that. They let her do it, and then somebody new came in, and they said, no more of this no-overtime business. Eight hours a day. She works seven days a week, but eight hours a day. Well, what did they say? I mean, they didn't say no more overtime. They said, we want information from your doctor about the reason for the restriction and the duration of it. What happened was, that's correct, Your Honor, for about 12 years now, so they had the eight-hour restriction. She went to a previous IME physician, Dr. Carr, in 2005, 2006, and the restrictions continued. It was still eight hours a day, seven days a week. That was the overtime restriction. What happened was, in the fall of 2006 Was he a treating doctor? No, he was not the treating doctor. Her treating doctors, Your Honor, kept her on the eight-hour restriction, which Kraft honored during that entire 12-year span. What happened was, in the fall of 2006, Kraft asked for an update of the restrictions, and they were promptly provided. Again, it was the eight-hour-a-day restriction. Kraft was not satisfied with that and just removed her from the schedule, refused to schedule her for work. In the spring of 2007, they sent her to Dr. Carr again. And what Dr. Carr said at that point, Your Honor, was that she has certain physical limitations, certain restrictions that are ongoing, but they are compatible with continuing to work. And there's no reason for this eight-hour restriction. Well, Dr. Rastel, I guess, who gave her an updated medical evaluation in December 2006, continued the eight-hour restriction, and said, I don't think Kraft ever got a response to that inquiry. Never had the chance, Your Honor, because she was immediately removed from the schedule, and then they went off on this IME process instead. So what happened was, they removed her. There is that statement from Kraft. There were two different requests, right? There was one in October. Kraft asked for updated medical restrictions by December 2006, again asking the reason and anticipated length of the restriction. And then the answer they got back didn't provide that information. And then they asked again, correct? Well, I think the actual sequence was this. In October of 2006, Clark Nelson, the Kraft HR manager, sent out a That was complied with in November of 2006 with Dr. Rastetter's note. Kraft was then not satisfied with that and said, we need more information. They then immediately removed her from the schedule and then were off on this other route, which is to the IME. They scheduled her for an IME. The IME was completed in March or April of 2007. And in May of 2007, they issued the letter that we're here on. Am I looking at the right thing for the IME? Excerpts page, oh, it's several pages. It's in the 10th. It starts at 1055 and runs to 1060. March 16, 2007 letter from Dr. Carr. Am I looking at the right thing? I'm not sure I'm tracking it, Your Honor. Just go for your yellow sticky. I'm sorry? I assume you have a yellow sticky on it and it's all marked up. But I'm not, are you talking about the independent medical evaluation? I wanted to know if I'm looking at the right IME. Is this the last independent medical from Dr. Carr? Yes, this is at, well, it's the independent medical examination dated March 16, 2007. Yep, is that it? That's the last one. Okay, thanks. Yeah. That's the company doctor, right? That is the company doctor. That is Dr. Carr. That's the second medical IME. But to complete this process on SCR 80, which is, was Exhibit 116, you see the letter that triggered this appeal. And that's a letter from Clark Nelson to Valina Neal, and he says there you have the following options. One, you can return to work with the above restrictions. Well, that's referring to the restrictions that Dr. Carr had placed in the IME we were just referencing. Pushing, pulling, or lifting 25 pounds or more. Yes, but no overtime restriction. That's right. Okay. The second one is where the district court made the error. Because the district court said, because you failed to, you know, to engage in the interactive process by not doing number two, by obtaining an IME, your own IME, to dispute Dr. Carr. It wouldn't be an IME, would it? Well, I thought IME meant the company doctor. And when it was your own doctor, it was not an IME because it's not independent of you. I think we've got a nomenclature issue here. But it matters because of the duty of confidentiality and the duty of the doctor to the patient. Whether it was correctly termed an IME, it's kind of thrown around. It's kind of, you know, it's just kind of the way things are stated. But I appreciate what you're saying, Your Honor. That's probably correct. Well, it also matters whether she's obligated to pay. If she wants to hire a treating physician, she has to pay for it. But if it's an IME, the company has to pay for it. Isn't that the law in Oregon? The law in Oregon is that if you want to continue, if the employer places as a condition of employment, a medical exam or a medical certification, the employer has to pay for it. But there wasn't a condition of her continuing employment. They say you can return to work. She never gave a reason for the restriction of the eight-hour day. And so they said you can return to work with what Dr. Carr said. But if you still say that you can't work more than eight hours at a time, then you have to come up with some medical excuse, which she hadn't provided previously. I don't see why that's a condition of continued work. Well, it is because her physicians for 12 years had said you do not need, you should not work more than eight hours overtime. Remember, we're not here on the validity of these options. We're here on whether the plaintiff failed to engage in the interactive process. And the district court is saying, well, one of the things, one of the reasons of your failure was you didn't go out and get an IME at your own expense. Well, that's patently illegal under ORS 659A-306. The employer can't ask you to do that. Explain. Let's look at that statute and explain what Kraft did that was illegal. 659A-306? Right. It says it is an unlawful employment practice for any employer to require an employee as a condition of continuation of employment. So what, why was this a condition of continuation of employment since they say you can come back to work? In violation of her doctor's restrictions. And they were saying she could only go back to work if she violated 12 years of medical restrictions, saying stay within the eight hours. But the statute doesn't really address that, right? No, the statute addresses the second part of their two-part interactive process, which was they're saying, but if you want to dispute what Dr. Carr said, go out and get your own doctor, but pay for it. Counsel, help me with that. That violates the statute. Help me with something else. I don't see why she's a disabled person. To be a disabled person under the Oregon law, your impairment has to substantially limit one or more of the listed major life activities, such as sleeping, walking, standing, lifting, and bending. And as far as I can tell from all the doctor's notes, she has an impairment. She has real bad back. And it limits, to some extent, all those activities. But I can't see where it's very substantial. I mean, I don't know if it's a majority, but an awful lot of people her age and older have limits like that, and she can still work an eight-hour day, seven days a week, which is pretty impressive. So it's hard to see where she's substantially limited and how she can be classified as a disabled person. And if she's not a disabled person, then you never get to the question whether the company violated the obligations owed to disabled persons. I agree with that last statement. May I finish? Please. May I address your question? Thank you. Yes, of course, if she's not a disabled person, we pack up our tent and go home. But, as you know, the district court disagreed with that. The district court found that. We give you a no vote, don't we? You do. And it's summary judgment, so it doesn't really matter if the district court disagrees. Well, I appreciate that, Your Honor. And I've summarized the evidence on page two of my reply brief. I go through the other evidence in addition to what's found in the district court opinion, because I don't believe that the district court fully addressed all the evidence in the record. She's a disabled person. Just say it in plain English. I can say it in plain English. She's suffered low back problems and pain since 1994. Her back goes out several times a year. When her back goes out, she requires bed rest, which lasts from four days to two weeks. She has to perform stretching exercises. Her left leg goes numb due to her back condition. She has radiating pain in her left leg. Her left leg buckles, and that's in addition to all the other limitations. It's all just kind of routine for people with low back problems. And the fact of the matter is, her own doctor said, 25-pound weight restriction, well, that means she can lift a case of Coca-Cola or a big bag of dog food, no kneeling, crawling or climbing, and no prolonged bending in awkward positions. But that's about it. She can work eight hours in a 24-hour period. Well, if I may continue. Are there cases that say people at that level are disabled in Oregon? I don't know that we have a case exactly on point. I didn't remember any. No, but it is a factual question. And the court would have to say that no reasonable person, no reasonable juror on this set of facts could find that the plaintiff is disabled. And as I think the district court correctly found on that point, it really needs to go to the jury for that determination. What major life activity is she not able to complete? Walking. There were three of them, Your Honor. Walking, sitting, standing. But she can walk every day. She works eight hours a day. She does. She does, but she's substantial. Try another one. Well, it's not that you can't walk at all to be substantially. You have to be substantially impaired and walk in a major life activity, not that you can't do a particular job. If you can't do a particular job, it doesn't mean you're disabled. You have to have a major life activity in which you're substantially impaired. What is that? Walking? Yes. We did not make the argument that she was substantially impaired with respect to the major life activity of working. That was excluded from our analysis. We made the argument that she was substantially limited with regard to the physical with the major life activity of walking, sitting, and standing. And there's a very precise statutory definition. She has the physical impairment. There's no doubt about that in terms of her back and her walking. And then there's all the other evidence, which is on page two of the reply brief, which references what the jury would be able to consider in making the determination whether she is a disabled person. Okay. Thank you, counsel. Thank you, Your Honor. I appreciate it. May it please the Court, Calvin Keith for Defendant Apple Lee, Kraft Global. Do you agree with the district court that there's no impairment of a life activity here? A substantial limitation on a major life activity? No. We do not. We think to put it locally, the court passed the buck on that one. I was confused on that. When I look at that reply brief, I kind of ignored it, because it was the lawyer saying what he said the facts were, citing to another place where he said what the facts were, instead of evidence cognizable under Rule 56, which was only cited generally. Why don't you tell me with more specific cites what the impairments are to show whether she's disabled in the Oregon definition or not? I don't we have cited what we believed in our brief, and I don't know that I can pull them out as we talk. But I thought probably you'd have the excerpts just all marked up and tabbed, and you could tell me what the evidence was. Well, I didn't think that there wasn't much evidence. The evidence is, in the record, a 1994 physical capacities exam. Let me ask you about that, if I might. This is from Dr. Parsons, correct? Yes. He lists these restrictions, and he said they're permanent. He does. Why isn't that enough to create a genuine issue of material fact right there? Which I believe is what the court was alluding to, kind of saying we've got from 1994 forward, the evidence is this Ms. Neal can work in a job that requires, as she testified, continuous walking, pulling, standing, sitting. We've got then the restrictions from 1994 forward. And I think the Court said when you compare everything after 1994, which does not indicate a substantial limitation, with 1994, you've got a jury issue. I think that's what the Court held. And there's two ways to look at that. First, looking only at 1994, I think if you look at that, there's not a case on point in the Ninth Circuit or in Oregon. And as the Court knows, Oregon uses the Federal law for – in determining the application of Oregon law. They did it at the time that this case relates to, which is under the old ADA, the Sutton and Toyota ADA of a judicial gatekeeper on the issue of disability. They also now do it, by the way, as effective 2009 under the new ADAAA, which would make a ruling by the way in this case a limited ruling on the disability issue, and our law has now changed. So the court has changed the rule in this case.  And so we're going to have to look at those restrictions going forward. So this – the issue in this case is old law, pre-2009. But the Court – So you're saying that the district court wasn't clearly wrong in saying that there was a genuine issue of material fact based on Dr. Parson's 1994 letter? We believe they were clearly wrong for two reasons. One, the 1994 on its face, those restrictions – and before I got off tangent, those restrictions, although it's not a Ninth Circuit case on point, we've cited a number of cases where employees say I can only walk 15 minutes, I can walk four blocks. There are district court cases, and in each of those the court said that is not a substantial limitation on a major life activity. In fact, a number of older Americans have that same type of impairment, and it was not meant to be a disability. So I would argue that the 1994 on its own does not establish a substantial limitation on a major life activity. Four hours of walking out of eight, and this is just the work day, plus two hours standing. That's six hours on your feet out of an eight-hour day. That's pretty good for anybody, but that is clearly not a substantial limitation. The Court can also look at it as if you look at all the evidence after 2000 – after 1994, all of the doctor's reports, the IME, et cetera. Yes. Counsel, is there some Oregon law that says one way or another, some case of a similar nature that says whether there's a jury issue on whether a person with her level of impairment is a disabled person? There is not. There is not. Now, let's assume for purposes of discussion at the moment that jurors, reasonable So there's a genuine issue on that, and you're not entitled to summary judgment on whether she's a disabled person. If we assume that, I have trouble seeing why she can be – why she would lose on account of not participating in the process. You've got a 94 letter from a neurological surgeon, MD, saying she's unable to work overtime until further notice, which never came. And then you've got a 2006 letter saying she's restricted to no more than eight hours in her 24-hour period, plus 25-pound major weight limit restriction and so forth. The only one that matters is the eight hours. Then you've got an IME. Well, before – the IME is from the company's doctor, Dr. Carr. And although it's painted in the briefs, for reasons I don't understand, as though it conflicted with Dr. Rastall, I read it, and it doesn't. I mean, she's positive on the imaging. Her myelogram is positive. He says, in view of her surgically treated herniated disc and progressive degeneration, the current work restrictions are reasonable, at least as far as lifting. Very risky for her to be pushing, pulling, or lifting more than 25 pounds. And then your brief quoted selectively. You quoted the first sentence of this next paragraph. As far as the ability to work more than eight hours a day, this should not be affected by her condition. You did not quote the next sentence. She may become more painful if required to work more than eight hours a day, but it would not have any injurious effect on her condition, whereas exceeding the lifting restrictions would be likely to cause further injury to her back. Now, when I read the second sentence as well as the first sentence, it's plain that the company doctor is saying she's going to injure her back if she lifts too much or high risk of it. She won't further injure her back if she works more than eight hours, but it will hurt. It will hurt more than her back does usually. I don't see why that doesn't support rather than undermine Dr. Rastall's conclusion that she should not work more than eight hours. And as far as the reasons go, you've got this five-page report saying what are myelogram shows, and those are the reasons. So I don't see why the company can doctor shop at this point and say, well, we've got an IME, but we don't like it, so we want another IME from a company doctor except you should pay, and it really is a company doctor because they won't keep your confidence. They'll report to us. I don't get it. I don't see how you can. The reason is because the court, the company did not believe that the IME supported the eight-hour limitation. Can the company doctor shop at the employee's expense forever until it gets a good report? The company took the position that this IME was a report that said she did not need an eight-hour limitation. Yeah, and the company didn't read the sentence it didn't like. It only read the sentence it liked. If the company was wrong, and we disagree on that, but if the company was wrong, the problem was. Well, tell me how to read that second sentence in a different way from the way I read it. I mean, we've all got it right in front of us. Tell me how to read it. It says that the longer she works, the more likely there could be additional pain without exacerbation of injury. Exactly. It says she may become more painful if required to work more than eight hours a day, but it would not have any injurious effect upon her condition, whereas exceeding lifting restrictions would be likely to cause further injury to her back. That's what it says. Correct. And the company and the doctor said if it doesn't cause further injury, exacerbate her condition, then it's not a condition of employment, the eight hours. It may cause, if you have a bad back, the longer you stand, the more it's going to hurt. That's true. What legal provision supports the notion that you can make an employee do something that hurts more than it would for a nondisabled person as long as it doesn't cause additional injury? There is none. So you're just making that up? No. It's the company's position. The problem here is the company's position, but we don't defer to the company's position. We judge the company's position. The other thing that I showed, and this is based on the fact that I did the work on the plaintiff, I think, understood, but here the problem is that never got explored because the process was artificially terminated. Nothing else happened. All it terminated that I can see is that she wasn't willing to spend her own money buying the company another IME so that the company could go doctor shopping. What else is there? Well, just to be clear, there's nothing in the record that shows that. The plaintiff's statement... I'm looking at it. No, there's nothing in the record that shows the plaintiff terminated the process because she didn't want to pay. Her record statement in her declaration, her affidavit, is that she terminated the process because she believed, because the company never said it would rely on the third IME, and that she believed the company was unwilling to return her to her position with an accommodation. What should I look at? What page? It's the... Excerpt of the record, I believe, is in S.E.R. 5. Paragraph 4. Excerpt page 5? S.E.R. 5, yes. Paragraph 4. S.E.R. Okay. Defendant never agreed to be bound by the IME, and I believe defendant had already decided not to allow me to return to work with a daily overtime restriction because it was disregarding the medical restrictions set forth by all my physicians since 1994. That's the only record evidence we have of the plaintiff's intent in breaking off the process. Well, it's true that the company would not be bound by the IME it had obtained from Dr. Carr, and it's true that the company didn't agree to be bound by a second IME. Correct. And it's true that the company wanted the second IME to be at her expense. And it's true that the company was disregarding the medical restriction placed on her by all our physicians. What about that is wrong? Nothing, but that was her intent. That's her stated reason for not continuing the process. The issue of whether we've been – I notice I've way overstayed my time. My apologies. But the issue of whether we would pay for the exam or who would pay for the exam, one was never explored because it wasn't raised. And it doesn't appear to be from the record the reason the process failed. Thank you. Neal v. Kraft Foods is submitted.
judges: Kleinfeld, Bea, Ikuta